IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES A. MARQUEZ,

        Plaintiff,

v.                        Civ. No. 05-414 JH/RLP

STATE OF NEW MEXICO,
GENERAL SERVICES DEPARTMENT,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's *Motion for Summary Judgment* [Doc. No. 7] and *Defendant's Cross Motion for Summary Judgment* [Doc. No. 9]. After careful consideration of the law and the briefs, the Court concludes that Plaintiff's motion should be denied, and Defendant's motion should be granted.

## FACTUAL BACKGROUND

Plaintiff Charles A. Marquez ("Marquez") is a former employee of the Defendant, the State of New Mexico's General Services Department. In his Complaint filed on April 12, 2005, he alleges that, after a series of actions (including a demotion in June of 2003) in violation of the rules and regulations applicable to state personnel, Defendant constructively discharged him from his employment in September of 2003 by transferring his position from Santa Fe, New Mexico to Roswell, New Mexico. He also contends that Defendant retaliated against him for filing a discrimination complaint by failing to rehire him for various positions for which he has applied. Marquez asserts claims of discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA") (Count I), national origin discrimination in violation of Title VII of

the Civil Rights Act of 1964 ("Title VII") (Count II), sex discrimination in violation of Title VII (Count III), disability discrimination in violation of the Americans With Disabilities Act ("ADA") (Count IV), and retaliation for protected activity in violation of Title VII (Count V).

This is not the first lawsuit that Marquez has initiated based upon the allegations in the Complaint in this case. On August 2, 2004, Marquez filed a complaint in state district court asserting many of the same claims he has alleged here. The defendants in that case were Governor Bill Richardson, Edward J. Lopez, Jr., Michael Vinyard, Michael R. Jaramillo, and the State of New Mexico General Services Department. On September 3, 2004, the defendants removed the case to this federal district court, where it was assigned to Judge Cristina Armijo. *See Marquez v. Richardson, et al.*, Civ. No. 04-0996 MCA/LFG ("*Marquez I*"). Although Marquez had received a right to sue letter from the EEOC on his age, national origin, and sex discrimination claims, he had received no such letter for his retaliation claim, which still remained in the pretrial administrative stage. On November 22, 2004, the parties in *Marquez I* filed a joint Motion for Entry of Stipulated Order of Dismissal Without Prejudice and Tolling Agreement. On November 30, 2004, Judge Armijo granted that motion and entered a Stipulated Order of Dismissal Without Prejudice and Tolling Agreement. In addition to dismissing the case without prejudice, that order provides, in pertinent part:

> [T]he parties have agreed to dismiss this lawsuit without prejudice, and have entered a tolling agreement that will allow Plaintiff to re-file the claims he has asserted in this action against the State of New Mexico, General Services Department, after exhausting his administrative remedies on the retaliation claim. Specifically, the parties agree that **Plaintiff may re-file a lawsuit asserting the claims for discrimination that have been asserted in the present lawsuit against the State of New Mexico, General Services Department, but not against the individual defendants, and may**

> **also assert claims for retaliation, within ninety days of the date when Plaintiff receives a right to sue letter from the EEOC on his presently pending charges of retaliation.** Further, nothing in this agreement waives any defenses that could be asserted by Defendants as to any of Plaintiff's present claims.

(emphasis added).

According to Paragraph 8 of his Complaint in this case, Marquez received the EEOC's notice of non-determination and right to sue letter regarding his retaliation claim on or about January 10, 2005, thirteen days after it was mailed on December 28, 2004. However, he provides no evidence in support of that assertion. A review of the docket sheet in *Marquez I* reveals that on April 6, 2005, Marquez filed an Amended Complaint in that case, which had been terminated. He then provided the Court with a proposed *Order [sic] to Withdraw Amended Complaint*, which Judge Armijo construed as a motion to withdraw his Amended Complaint and to dismiss the case without prejudice pursuant to the tolling agreement. On April 12, 2005—one day after the deadline imposed by the tolling agreement—Marquez filed his complaint in this case. Then, in an order entered April 15, 2005, Judge Armijo for the second time dismissed *Marquez I* without prejudice pursuant to the tolling agreement.

## DISCUSSION

### I. DEFENDANT'S COMPLAINT IS UNTIMELY

In its Cross Motion for Summary Judgment, Defendant argues that Marquez's complaint in this case was filed more than ninety days after his receipt of the EEOC's right to sue letter. Marquez does not respond to this argument, but merely states in conclusory fashion that he has complied with all necessary timeframes and deadlines.

The EEOC right to sue letter is dated December 28, 2004, and Defendant has provided

3

evidence that its counsel received it on December 29, 2004. *See* Defendant's Exs. 15 and 16. As stated above, Marquez contends that he did not receive the right to sue letter until January 10, 2005, thirteen days after it was mailed. Marquez does not offer any evidence establishing the date of receipt, nor does he indicate that the letter was addressed improperly or had been returned to the EEOC for improper postage, nor any other explanation for this alleged delay in delivery of the mail. As indicated above, Defendant has provided documentary evidence that it received the right to sue letter on December 29, 2004. The Court notes that in the absence of evidence as to when a plaintiff has received a final agency decision or a right to sue letter, the Supreme Court, relying on Federal Rule of Civil Procedure 6(e), presumes that the notice was received three days after it was mailed. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148 n. 1, 104 S. Ct. 1723, 1724 (1984). Both the Tenth Circuit and district courts within this circuit have applied this three-day presumption in various contexts. *See, e.g., Jarrett v. U.S. Sprint Communications Co.*, 22 F.3d 256, 259 (10th Cir. 1994); *Palmer v. Sprint/United Midwest Mgmt. Servs. Co.*, No. 96-2503-GTV, 1997 WL 383065 (D. Kan. June 18, 1997); *Bergman v. Sprint/United Mgmt. Co.*, 981 F. Supp. 1399, 1402 (D. Kan. 1997). However, other courts have used a common-law presumption of receipt five days after mailing. *See, e.g., Hunter v. Stephenson Roofing, Inc.*, 790 F.2d 472, 475 (6th Cir. 1986); *Washington v. Foresman*, 148 F.R.D. 241, 244 (N.D. Ind. 1993); *Wagher v. Guy's Foods, Inc.*, 768 F. Supp. 321, 323 (D. Kan. 1991). Even if the Court applies the more generous presumption that mail delivery took five days, Marquez would have received it on January 3, 2005, and his complaint should have been filed no later than April 4, 2005 (April 3, 2005 was a Sunday). However, he did

not file his complaint until April 12, 2005, and therefore it is untimely.[1]

Because Marquez's complaint in this case was untimely filed even if the Court accepts his unsupported allegation that he received the right to sue letter on January 10, 2005. Ninety days from that date is April 10, 2005, which was a Sunday. Accordingly, under the terms of the tolling agreement, Marquez was obliged to file his new complaint no later than April 11, 2005, but he did not do so until April 12, 2005. Marquez's complaint is untimely, and therefore it will be dismissed in its entirety.

## II.     DEFENDANT IS IMMUNE TO MARQUEZ'S CLAIMS UNDER THE ADA AND THE ADEA

As explained above, Marquez's claims should be dismissed for untimeliness, which standing alone is sufficient grounds to grant Defendant's motion for summary judgment. However, even if the complaint had been filed in a timely manner, his claims still should be dismissed on the merits.

Marquez has sued the Defendant, a state agency of the State of New Mexico and an undisputed arm of the state, under two federal statutes: the Americans With Disabilities Act and the Age Discrimination in Employment Act. However, the United States Supreme Court has ruled that the ADEA did not abrogate the States' sovereign immunity to suits brought by private individuals under that statute. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000). The Supreme Court has issued a similar ruling as to lawsuits for money damages brought by individuals against States under the ADA. *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 373-74 (2001). Under the rule of *stare decisis*, this Court is bound by those rulings and concludes that

---

[1] Even if the Court were to find that Marquez's erroneous April 6, 2005 filing of the complaint in the closed case was the operative date—an argument not advanced by Marquez and not accepted here—he still did not meet the 90-day deadline imposed by the tolling agreement.

Defendant is immune from these claims. Defendant is entitled to judgment as a matter of law on Marquez's claims for age and disability discrimination under the ADEA and the ADA.

## III. DEFENDANT HAS FAILED TO COME FORWARD WITH SUFFICIENT EVIDENCE TO SUPPORT HIS CLAIMS OF DISCRIMINATION AND RETALIATION

In his motion for summary judgment, Marquez asks the Court to grant him summary judgment on all of his claims. To that end, he has attached several exhibits to his motion. Similarly, Defendant has attached exhibits in support of its cross motion for summary judgment. The Court considers all of these documents in the record in ruling on the two motions.

A review of the evidence reveals no direct evidence that Defendant discriminated against Marquez on the basis of his race or sex, as well as retaliation. Where there is no direct evidence of discrimination, the Court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000). Under *McDonnell Douglas*, a plaintiff must establish a prima facie case of unlawful discrimination. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the plaintiff's termination. *See id*. If the employer produces such a reason, the burden returns to the plaintiff, who can avoid summary judgment only if he or she shows that the employer's proffered reason was merely a pretext for unlawful discrimination. *See id*.

Here, Marquez claims to have suffered both a discriminatory demotion and a constructive discharge, as well as a retaliatory failure to rehire. To establish a prima facie case of discriminatory demotion, Marquez must show: (1) "that he was within a protected group, (2) adversely affected by defendant's employment decision, (3) qualified for the position at issue, and (4) that the job from

6

which he was demoted was not eliminated." *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000) (citation omitted). Ordinarily, a plaintiff who has been terminated can prove a prima facie case of employment discrimination by producing evidence that (1) he or she belongs to a protected class, (2) he or she was qualified for the job, (3) despite these qualifications, he or she was terminated, and (4) the job was not eliminated after his or her discharge. *See, e.g., Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999). For a prima facie case of retaliation, an employee must prove that (1) he "engaged in protected opposition to discrimination;" (2) he suffered "an adverse employment action"; and (3) "there exists a causal connection between the protected activity and the adverse action." *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004). Establishing a prima facie case gives rise to the rebuttable presumption that the employer unlawfully discriminated against the employee. *See id.*

In considering whether a plaintiff has satisfied its prima facie case of discrimination, the Court may not consider a defendant's evidence regarding an employee's work performance. *See MacDonald v. Eastern Wyoming Mental Health Ctr.*, 941 F.2d 1115, 1119-20 (10th Cir. 1991). *See also EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192-93 (10th Cir. 2000); *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1469-70 (10th Cir. 1992). Rather, a plaintiff may establish his prima facie case that he is qualified for a position by presenting "credible evidence that [he] continued to possess the objective qualifications [he] held when [he] was hired, or by [his] own testimony that [his] work was satisfactory, even when disputed by [his] employer, or by evidence that [he] held [his] position for a significant period of time." *MacDonald*, 941 F.2d at 1121 (citations omitted). Reliance on an employer's evidence as a means to undermine the plaintiff's prima facie case of discrimination raises serious problems under the *McDonnell Douglas* analysis, which mandates a full and fair

opportunity for a plaintiff to demonstrate pretext. Such evidence is appropriately considered during the next phase of *McDonnell Douglas*' three part analysis.

The Court assumes, without deciding, that Marquez has satisfied his prima facie case.[2] The burden then shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment actions in took against Marquez. Defendant has met that burden. In April of 2003, Defendant commissioned an Procurement Assistance Program Management Performance Audit, which was performed by an outside auditor. *See* Defendant's Ex. 9. The auditors' conclusion was that the program's management office (led by Marquez) lacked "direction, training, leadership, and management." *Id*. at p. 7. It also found that the "Program Manager [Marquez] does not possess the skills or professionalism required to provide such governance and therefore directly accounts for the PMO's lack of aforementioned performance." *Id*. The auditors recommended that new leadership be installed. *Id*. at pp. 7-8. The auditors cited Marquez's lack of knowledge about the program, the dearth of leadership, and his inability to represent the program in a professional manner. *Id*. at p. 8. A random sample of clients was taken, and half of them gave Marquez the lowest effectiveness grade. *Id*. at p. 28. Also, during a management meeting on February 5, 2003, Marquez referred to his supervisor and cabinet secretary Edward Lopez, Jr. using harsh expletives, facts admitted by Marquez. Defendant's Ex. 10; Complaint at ¶ 16.

At this point, it is Marquez's burden to come forward with evidence to show that these

---

[2] Defendant argues that Marquez has failed to satisfy his prima facie burden, and therefore does not address the second or third prongs of the *McDonnell Douglas* burden shifting scheme. However, as explained above, the arguments and evidence that Defendant advances regarding problems with Marquez's performance and behavior at work are properly considered under the second prong, in which Defendant has the burden to show that it had a legitimate, non-discriminatory reason for the adverse employment actions against Marquez. Therefore, the Court will consider them in that context.

reasons proffered by Defendant are a mere pretext for other discriminatory reasons for his demotion. Marquez has failed to demonstrate pretext, and accordingly Defendant is entitled to summary judgment on his claims for sex and race discrimination, as well as retaliation.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion for Summary Judgment* [Doc. No. 7] is **DENIED**, and *Defendant's Cross Motion for Summary Judgment* [Doc. No. 9] is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**